UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ST. BERNARD PARISH | CIVIL ACTION |
| VERSUS | NO: 16-16294 |
| ATLANTIC RICHFIELD COMPANY, ET AL. | SECTION: "J"(4) |

## ORDER AND REASONS

Before the Court are two motions to remand, one filed by Plaintiff St. Bernard Parish **(Rec. Doc. 16)** and the other by Intervenors, the State of Louisiana, through Jeff Landry, Attorney General, and the State of Louisiana, through the Department of Natural Resources **(Rec. Doc. 18)**. Defendants Atlantic Richfield Co., et al. have filed multiple oppositions. At the direction of the Court, the parties have filed supplemental memoranda on the issue of federal question jurisdiction. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motions should be **GRANTED.**

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation derives from Defendants' alleged violation of Louisiana's State and Local Coastal Resources Management Act of 1978 and associated coastal regulations and local ordinances, La. Rev. Stat. § 49:214.21 *et seq.*, (collectively "CZM Laws"). (Rec. Doc. 1-2 at 1). The Parish and Intervenors assert that Defendants'

1

oil and gas exploration, production, and transportation operations violated state permitting laws by causing substantial damage to land and waterbodies defined by the CZM Laws. (Rec. Doc. 1-2 at 4, 8-9). Specifically, the Parish alleges that Defendants constructed and used unlined earthen waste pits located within the Parish's coastal zone. (Rec. Doc. 1-2 at 11.) The Parish claims that the use of these waste pits has had a direct and significant impact on the coastal waters located within the Parish and therefore a coastal use permit ("CUP") was necessary for each. Although the Parish alleges that the waste pits were constructed after enactment of the CZM Act of 1978, it asserts that any waste pits constructed before its enactment would still require CUP applications. The Parish alleges that Defendants violated the CZM Laws by not obtaining the required CUPs. Ultimately, the Parish asserts that Defendants' use of waste pits in the St. Bernard Parish coastal zone and their failure to properly close the pits and revitalize the sites have caused significant damage.

The Parish filed this suit in state court and on November 10, 2016, Defendants removed it to this Court. In response, the Parish and Intervenors filed the instant motions to remand. In light of the Fifth's Circuit's ruling in *Board of Commissioners of Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714 (5th Cir. 2017), this Court instructed the parties to brief whether federal question

jurisdiction exists over this case.  The briefing is complete and the motions are now before the Court.

## **LEGAL STANDARD**

A defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of proving by a preponderance of the evidence that federal jurisdiction exists at the time of removal. *DeAguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). The jurisdictional facts supporting removal are examined as of the time of removal. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). Ambiguities are construed against removal and in favor of remand, because removal statutes are to be strictly construed. *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002).

A civil action originally filed in state court may be removed to federal court on the basis of federal question jurisdiction if that matter is "founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b); *see also* 28 U.S.C. § 1331. In determining whether federal question jurisdiction exists over a matter, courts apply the "well-pleaded complaint rule," which considers whether a federal question is presented on the face of a plaintiff's properly pleaded complaint. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

Because the well-pleaded complaint rule focuses solely on whether a plaintiff has "affirmatively alleged" a federal claim, "potential defenses . . . do not provide a basis for federal question jurisdiction." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008) (citing *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 543 (5th Cir. 2005)). In fact, removal is not warranted pursuant to federal question jurisdiction "on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 13 (1983).

Despite the applicability of the well-pleaded complaint rule, a claim which has origins in state law may still be found to arise under federal law if it falls within a "special and small category" of cases. *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). The Supreme Court articulated the test for determining whether a claim falls within this narrow category, finding that federal question jurisdiction attaches to state law claims where:

> (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.

*Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005)). However, the category of cases envisioned in *Grable* is a "slim" one. *Empire Healthchoice Assurance*, 547 U.S. at 701. Moreover, the "mere presence" of a federal issue or the necessity of interpreting federal law "does not automatically confer federal-question jurisdiction." *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, 809 F. Supp. 2d 524, 536 (E.D. La. 2011) (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).

## **DISCUSSION**

Defendants assert three separate grounds for removal. They argue that the Parish's claims are subject to maritime jurisdiction and OCSLA jurisdiction, and that the Parish's claims raise federal questions. The first two alleged sources of jurisdiction are nonstarters. This Court's jurisprudence is clear that the Parish's claims do not create OCSLA jurisdiction and, assuming they are maritime claims, would not be removable solely on that ground.[1] *See, e.g., Parish of Plaquemines v. Total Petrochemical & Refining*

---

[1] Many cases similar to the above-captioned matter have been filed in Louisiana in recent years. They are commonly referred to as the "Oil Patch Cases." *See Borne v. Chevron U.S.A. Holdings, Inc.*, No. CIV.A. 15-631, 2015 WL 3417520, at *1 (E.D. La. May 27, 2015). In nearly all instances, the suits were filed in state court, removed to federal court, and ultimately remanded back to state court. For a brief history of how courts in this district have handled these cases, see *Plaquemines Parish v. Linder Oil Co.*, No. CIV.A. 13-6706, 2015 WL 2354183, at *1 (E.D. La. May 15, 2015).

5

*USA, Inc.*, 64 F. Supp. 3d 872, 899 (E.D. La. 2014); *Jefferson Parish v. Chevron U.S.A. Holdings, Inc.*, No. 13-16738, 2015 WL 2229278 (E.D. La. May 12, 2015). Defendants also make a vague allegation that federal question jurisdiction exists over the Parish's claims because the state court petition "raises complex and interrelated issues involving many areas addressed by federal statutes and regulations." (*See* Rec. Doc. 2 at 3.) This Court concurs with the multiple courts in this district that have found such nebulous allegations failed to satisfy the standard for federal question jurisdiction. *See, e.g., Plaquemines Parish v. Rozel Operating Co.*, No. CIV.A. 13-6722, 2015 WL 403791, at *5 (E.D. La. Jan. 29, 2015); *Borne v. Chevron U.S.A. Holdings, Inc.*, No. CIV.A. 15-631, 2015 WL 3417520, at *3-4 (E.D. La. May 27, 2015).

However, Defendants present a unique argument in favor of federal question jurisdiction that has not been raised in similar suits previously filed by Louisiana parishes against oil and gas exploration and production companies. Here, Defendants assert that federal question jurisdiction exists over the Parish's claims because they rely, at least in part, on federal regulations promulgated by the Army Corps of Engineers ("COE"). For the reasons described below, the Court disagrees.

6

After the Parish and Intervenors filed their motions to remand, the Fifth Circuit issued its opinion in *Board of Commissioners of Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714 (5th Cir. 2017). There, the court held that federal question jurisdiction existed over the plaintiff's negligence and nuisance claims because some of the claims relied on federal law to hold the defendants liable. *Id.* at 722. The Fifth Circuit noted that if state law did not establish a duty, then the "duty would have to be drawn from federal law." *Id.* at 723. The court ultimately concluded that the case arose under federal law because the state law claims could not be resolved without analyzing whether the duty of care created by multiple federal standards had been breached. *Id*. In light of *Tennessee Gas*, this Court instructed the parties to further brief whether the Parish's claims relied upon federal regulatory standards for relief.

After reviewing the supplemental memoranda, the Court is satisfied that federal question jurisdiction does not exist over the Parish's claims. This case is fundamentally about allegations that Defendants violated state regulations. The Parish claims that Defendants violated various provisions of the State and Local Coastal Resources Management Act of 1978, La. Rev. Stat. § 49:214.21 *et seq.*, ("the CZM Laws"). The CZM Laws use a permitting system to regulate certain activity that occurs within the coastal

7

zone of Louisiana. Under this regulatory scheme, all entities interested in commencing a "use" within the state's coastal zone must first apply for a coastal use permit ("CUP") from Louisiana's Office of Coastal Management ("OCM"). § 49:214.30. A "use"[2] is defined as "any use or activity within the coastal zone which has a direct and significant impact on coastal waters." § 49:214.23(13). If the OCM finds that an activity is likely to have a direct and significant impact, then it will decide whether to grant a CUP. *See* § 49:214.30(A)(1). Once a CUP has been granted, the OCM has the authority to create conditions with which the CUP-holder must comply. *See* § 49:214.36(C). If the user violates any terms or conditions of the CUP, the OCM may suspend, revoke, or modify the CUP or bring legal action. § 49:214.36(C)-(D).

However, not all activity that occurs within the geographical boundaries of the coastal zone constitutes a "use." *See* § 49:214.34(A). For instance, a person wishing to commence an activity that will not to have a "direct and significant impact on coastal waters" is not required to apply for a CUP. § 49:214.34(A). Occasionally, entities apply for a CUP even though the activity they intend to undertake is unlikely to have a direct and significant impact on coastal waters. When the OCM reviews

---

[2] La. Rev. Stat. § 49:214.25 distinguishes between two types of uses: uses of state concern and uses of local concern. The statute also includes non-exhaustive lists enumerating the type of activities that can be considered uses.

such an application, it issues a determination that the activity has "no direct and significant impact" on coastal waters. (Rec. Doc. 82 at 1); *See* § 49:214.34. This is referred to as an "NDSI determination." When the OCM makes an NDSI determination, the applicant is then free to commence the activity without a CUP. An NDSI determination does not provide the recipient with free reign to engage in conduct that will damage the coastal zone. If activity that has received an NDSI determination should later be determined to have a direct and significant impact on coastal waters, then the person responsible for the activity must apply (or re-apply) for a CUP at that point.

At issue here is whether federal question jurisdiction exists over activities in the coastal zone that do not require CUPS. An activity that does not require a CUP may still require a permit from the Army Corps of Engineers ("COE") under an entirely separate federal regime. Defendants use this separate COE regulatory standard to argue that the validity of at least some of the Parish's claims cannot be properly determined without analysis of the COE's federal standard.

Defendants' argument is premised on a misinterpretation of the effect of the OCM's decision not to issue a CUP. This decision does not mean that COE permits or federal law create the new standard – the standard set by the CZM laws still applies to activities that do not require a CUP. As stated above, an initial

9

NDSI determination does not insulate an entity from obligations under the CZM Laws if its operations affect the coastal zone. If, over time, the entity's activities begin to directly and significantly impact coastal waters, it must then re-apply for a CUP. This is because the CZM laws allow the OCM to take action against any and all *unpermitted* and unmitigated damage to the coastal zone. Any failure to re-apply for a CUP at this point is a failure to abide by state—not federal—laws.

Defendants refer the Court to an exhibit that the Parish attached to its state law petition. The petition refers to the exhibit as a list of all CUPs granted in the Parish's coastal zone ("Permit List"). The Parish later clarified that the Permit List is actually a "list of all CUP numbers under which CUP *applications* were filed." (Rec. Doc. 82 at 6) (emphasis added). In other words, the Permit List includes all CUP applications for the Parish's coastal zone from the enactment of the CZM Laws, irrespective of whether a CUP was granted. Defendants seized upon this Permit List to point out that some of the files on it never had CUPS granted and are only regulated by federal COE standards. As a result, Defendants argue that the Court must rely on federal COE regulations when determining the validity of the Parish's claims with respect to these files. However, the COE standards are not relevant to this determination. Whether the CZM Laws have been

violated can be determined without referring to any federal standards.

Defendants also point out that in the years immediately following enactment of the CZM Laws, the responsible state agency had not yet developed the permitting system it uses today. Defendants assert that one of the permit files in the Permit List includes the following statement from that time period:

> We have received your application for a coastal use permit for the activity listed above. In accordance with La. R.S. 49, Section 213.11E, the Coastal Management Section of the Department of Natural Resources is in the process of developing policies for issuing general and area permits. *Until such policies are developed, the above referenced Corps of Engineers permit will suffice, and a coastal use permit will not be necessary.*

(Rec. Doc. 26 at 28; Rec. Doc. 83 at 3) (emphasis added). No CUP was ever issued for this permit file. Defendants assert that the situation is identical for at least three other permit files. Defendants argue that in these cases, the COE permits necessarily became the applicable standard. This reading is incorrect. The statement that a COE permit would "suffice" did not mean that the state relied on a federal standard; it simply meant that the state agency found that a CUP would "not be necessary." And, as described above, any CUP applicant would be required to re-apply for a CUP if its activities would have a direct and significant impact on the coastal area. The COE permit "is a separate federal permit with its own terms and conditions." (Rec. Doc. 26-1 at 7).

11

Thus, determining whether Defendants violated the CZM laws would not require reference to the COE regulations. Furthermore, the Parish and Intervenors provide an affidavit from Keith Lovell, the current Assistant Secretary of the OCM, who stated that the "OCM has [n]ever relied upon any Army Corps of Engineers standards in making any determination, exclusive or otherwise, under the [CZM Laws]." (Rec. Doc. 82-1 at 4).

The Parish and the Intervenors repeatedly state that the OCM never relies on COE permits because Louisiana's OCM and the federal COE have entirely separate permitting schemes. While some interplay and cross-referencing may exist between the two agencies, there is never a situation in which the OCM relies upon the COE to permit or enforce the CZM laws, and the OCM does not itself enforce COE permits. There is no federal question involved in this case.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' *Motions for Remand* **(Rec. Docs. 16, 18)** are **GRANTED**.

New Orleans, Louisiana, this 6th day of July, 2017.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE